THE ALINE.[1]

(*District Court, E. D. New York.* December 31, 1883.)

1. SHIPPING — DELIVERY — PERISHABLE CARGO — DISCHARGE IN FREEZING WEATHER—"ACT OF GOD."

   A steamship brought a consignment of oranges to New York, where she arrived on December 29th. The weather was so cold as to render it impossible to land oranges without freezing them, and continued below zero for several days. The oranges were landed in spite of the consignee's objection, and their value was for the most part destroyed. *Held,* that the act which destroyed the fruit was not the "act of God," but of man, in discharging the oranges at an unsuitable time.

2. SAME—EXCEPTIONS IN BILL OF LADING—VESSEL READY TO DISCHARGE.

   A vessel is not "ready to discharge," within the meaning of a provision in the bill of lading that all goods are "to be taken from along-side immediately the vessel is ready to discharge," when it is impossible for her to discharge without destroying the cargo.

3. SAME—"EFFECT OF CLIMATE."

   "Effect of climate," used in a bill of lading, does not apply to the effect of a temporary frost.

4. SAME—NEGLIGENCE.

   Where it was proved that there was no necessity to land the oranges at that time, either because other consignees had demanded their cargo, which could not be separated from the libelant's, or because of the engagements of the vessel, it was held to be negligence on the part of the vessel to discharge at that time, and a decree was ordered in favor of the libelant.

In Admiralty.

*Jas. K. Hill, Wing & Shoudy,* (*R. D. Benedict,* of counsel,) for libelant.

*McDaniel, Wheeler & Souther,* for claimants.

BENEDICT, J. This action is brought to recover the value of a consignment of oranges shipped on board the steamship Aline, in Jamaica, to be delivered at New York. There is no substantial dispute in regard to the material facts. The oranges were shipped in good order, and arrived in New York in like order. The day on which the steamer arrived at New York, being Wednesday, December 29th, was so cold as to render it impossible to land oranges without freezing them. The weather continued cold, indeed below zero, until the following Monday. The steamer commenced to land oranges on the day of her arrival, and on that and the following Thursday and Friday landed the whole consignment. The necessary consequence was

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.

that the libelant's oranges were frozen, and their value for the most part destroyed. Objection was made by the libelant to the landing of the oranges because of the unsuitable weather, and he now brings this action to recover his loss.

It is conceded in behalf of the steam-ship that her defense, if she has any, rests upon the exceptions mentioned in the bill of lading. One of the exceptions relied on is that of damage caused by "act of God." But the act which destroyed this fruit was not the act of God, but of man, in discharging the oranges at an unsuitable time.

Again, it is contended in behalf of the steamer that the bill of lading makes special provision for the landing of these oranges when they were landed, because it says, "all goods to be taken from alongside immediately the vessel is ready to discharge." But this provision cannot relieve the steamer, for she was not "ready to discharge," within the meaning of this provision, when it was impossible for her to discharge without destroying the cargo. Ready to discharge means ready to make a proper discharge. And a discharge of oranges when the weather is so cold as to freeze them before they can be removed from the wharf is not a proper discharge.

Next, it is contended that the steamer is freed from liability by the provision of the bill of lading, which declares that the ship shall not be liable for any injury to the goods occasioned by "* * * effect of climate or heat of holds." But it would, as it seems to me, be straining language to consider the word "climate," used in the bill of lading, as intended to apply to a temporary frost such as existed when the steamer arrived. Moreover, in my opinion, negligence is shown, if it be proved, as I think it has been proved, that there was no necessity to land the libelant's oranges at the time when they were landed. The claimants insist that the steamer was compelled to land the oranges when she did, because she was a general ship, and other consignees of oranges had demanded the immediate landing of their fruit, from which the libelant's fruit could not be separated in the ship. If such a demand on the part of other consignees of cargo can be said to have been proved, it created no duty on the part of the carrier to discharge immediately, when such discharge would necessarily involve the destruction of cargo belonging to others. Such a demand, to be effective, must be reasonable. It was unreasonable on the part of consignees of any cargo to ask the steamer to destroy the libelant's cargo in order to make immediate delivery of theirs. Nor was there any necessity for the immediate discharge of these oranges arising out of the engagements of the steam-ship. The question whether a steamer running in a regular line, and being under obligation to sail on an advertised day, has the right to discharge inward cargo regardless of results, when the discharge becomes necessary to enable her to sail on her appointed day, does not arise here. For here it is shown that the steamer did not sail on her appointed day, but remained over a day, merely for the sake of getting in more

cargo, and it also appears that there was time before she sailed to have landed all the oranges in suitable weather and taken in all the outward cargo that she had to take. In this instance, therefore, there was no necessity to discharge the oranges when she did, to enable the steam-ship to keep her appointment. The oranges in question were shipped under two bills of lading, differing from each other in some particulars, but, in the view I have taken of the case, they are alike in legal effect, so far as regards the libelant's demand, and under any aspect in which I have been able to consider them, they do not relieve the steam-ship from responsibility to the libelant for the destruction of his fruit. There must therefore be a decree in favor of the libelant. The amount of his damages will be ascertained by a reference.

Let a decree be entered accordingly.